```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


MICHAEL TAPP-EL,                    )
                                    )
               Petitioner,          )
                                    )
          v.                        )         1:19CV131
                                    )
ROY COOPER,                         )
                                    )
               Respondent.          )
```

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, filed a Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2; see also Docket Entry 9 (requesting appointment of counsel).) Respondent has moved for summary judgment both on grounds of untimeliness and on the merits. (Docket Entries 6, 7.) For the reasons that follow, the Court should grant Respondent's instant Motion.

**I. Procedural History**

On November 19, 1998,[1] in the Superior Court of Forsyth County, a jury found Petitioner guilty of first-degree kidnapping, three counts of second-degree rape, eights counts of second-degree forcible sexual offense, and common law robbery in cases 97CRS48239 through 97CRS48246, case 98CRS4157, case 98CRS4158, and cases

---

[1] In the Petition, Petitioner notes the date of judgment of conviction and date of sentencing as November 11, 1998 (see Docket Entry 2, ¶¶ 1-2); however, the record on appeal, specifically the verdict sheets and judgment and conviction records, establish the date of conviction and date of sentencing as November 19, 1998 (see Docket Entry 7-3 at 55-66, 70-91).

98CRS4177 through 98CRS4179. (See Docket Entry 2, ¶¶ 1-2, 5-6; see also Docket Entry 7-3 at 55-66.)[2] The trial court sentenced Petitioner to eleven consecutive sentences of 120 to 153 months' imprisonment. (Docket Entry 2, ¶ 3; see also Docket Entry 7-3 at 70-91.) Petitioner appealed (see Docket Entry 2, ¶¶ 8, 9), and, on February 1, 2000, the North Carolina Court of Appeals issued an unpublished opinion finding no error in Petitioner's convictions, State v. Tapp, 136 N.C. App. 669, 530 S.E.2d 367 (2000) (table).

Petitioner did not pursue any further appeal of the trial court's judgments of November 19, 1998 (see Docket Entry 2, ¶ 9(g)), but did, on August 23, 2018, file a pro se motion for appropriate relief ("MAR") "[t]o be recognized as a [M]oorish [A]merican" and thereafter, pursuant to "Moorish" beliefs, "demand[ed] his freedom and immediate release from the Department of Public Safety of Corrections [sic] in the state of North Carolina" (Docket Entry 7-6 at 3, 15).[3] The trial court denied Petitioner's MAR on August 29, 2018. (Docket Entry 7-7 at 3; see also Docket Entry 2, ¶ 11(a).) On October 3, 2018, Petitioner filed a pro se Petition for Writ of Certiorari in the North Carolina Court of Appeals (Docket Entry 7-8 at 2), which that court denied on October 9, 2018 (Docket Entry 7-9 at 2).

---

[2] Throughout this Memorandum Opinion, pin citations to page numbers refer to the page numbers that appear in the footer appended to documents upon their docketing in the CM/ECF system.

[3] Petitioner dated his MAR July 20, 2018. (See Docket Entry 7-6 at 15.)

2

Petitioner subsequently filed the instant Petition on January 23, 2019. (Docket Entry 2 at 15.)[4] Respondent moved for summary judgment both on grounds of untimeliness and on the merits (Docket Entries 6, 7), and, despite Petitioner's receipt of notice under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his right to respond in opposition to that Motion (see Docket Entry 8), Petitioner did not respond (see Docket Entries dated Feb. 27, 2019, to present). On March 29, 2019, Petitioner filed a Motion for Appointment of Counsel for Habeas Proceeding. (See Docket Entry 9.)

## II. Grounds for Relief

The Petition raises four grounds for relief:

(1) "[Petitioner] is a victim of ineffective assistance of counsel by [trial counsel] for sixth amendment rights violations," in that, "[d]uring the arraignment, trial[,] and appeal, counsel [f]ailed to effectively challenge the prosecution's case . . . by filing . . . motions to secure a reasonable plea[,] [failed to] [a]dequately raise contentions of law[,] failed to file motions to suppress evidence . . .[, and f]ailed to effectively

---

[4] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on January 23, 2019, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities (see Docket Entry 2 at 15).

3

preserve rights for appellate and collateral attacks" (Docket Entry 2, ¶ 12 (Ground One));[5]

(2) "this [C]ourt may decree its requisite jurisdiction by compelling lower court[s to] modify [sentence] term[s] under the concurrent sentence doctrine . . . through [ ] the U.S. Senate Bill 754-756, signed into law . . . on December 19, 2018 . . . to consolidate judgments into single counts . . . for a reduced sentence" (id., ¶ 12 (Ground Two));

(3) "new sentencing reduction evidentiary discovery hearing [is] required for expungement of prior convictions/changes in law . . . [because] the sentencing court established [Petitioner's] prior record level to be IV [and] as a result of Governor Roy Cooper's 2017 new expungement law . . . [the Court should] enforce [sic] the Forsyth County Superior Court [to] expunge file [numbers] 83-41769, 90-22991, 90-7814, 81-70 and Asst D.W.I.SI, (III Prior Record)" (id., ¶ 12 (Ground Three));

(4) "this Court is required by existing law to appoint counsel trained in law to assist in the cognizable brief of law," and "Petitioner, (a prisoner in custody) is constitutionally entitled to some form of legal assistance . . . since [North Carolina Prisoner Legal Services and the North Carolina Department of Public Safety] refuse to provide any assistance whatsoever" (id., ¶ 12 (Ground Four)).

---

[5] This Memorandum Opinion omits emphasis and quotation marks and applies standard capitalization and punctuation when quoting Petitioner's filings.

## III. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, "[b]efore [the C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. . . . The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[ ] facts that are materially indistinguishable from a

5

relevant [United States] Supreme Court precedent and arrive[ ] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## IV. Discussion

### A. Ground One

Respondent has moved for summary judgment on Ground One based on the Petition's filing outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 7 at 4-10.) In order to assess Respondent's statute of limitations argument, the Court first must determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on a claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005). Neither Petitioner nor Respondent has contended that paragraphs (B) or (C) apply in this situation; however, Petitioner has argued that he has "newly discovered evidence," thereby invoking paragraph (D). (Docket Entry 2, ¶¶ 12 (Ground One)(b), 18.) Alternatively, Petitioner has alleged that he "is not a trained litigator and requires the assistance of counsel [and] a law library," which the Court could liberally construe as a request to equitably toll the one-year limitation period. (Id.) Petitioner's arguments lack merit.

Paragraph (D) states that the one-year limitation period begins to run when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); see also Johnson

7

v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance."). Respondent correctly has observed that Ground One qualifies as untimely under subparagraph (D), because the cited "factual predicates for Ground for Relief (1) [regarding ineffective assistance of trial counsel] have been available to [Petitioner] since at least the time his conviction became final upon direct review." (Docket Entry 7 at 5.)

In that regard, "[n]one of the bases of [Petitioner's] claim that his lawyer was ineffective are based on newly discovered evidence" and, therefore, "[this] claim [falls] outside the one-year statute of limitations in [Section] 2244(d)(1)(D)." Lincoln v. Thornton, No. 1:14CV924, 2015 WL 11027776, at *1 (M.D.N.C. Jan. 2, 2015) (unpublished) (Eagles, J.) (internal citations omitted), appeal dismissed, 600 F. App'x 167 (4th Cir. 2015); see also Johnson, 2008 WL 199728, at *3 ("Once a petitioner is alerted to factual circumstances that could form the basis for a habeas claim, the statute of limitations begins to run under § 2244(d)(1)(D), and accrual of the statute does not await the collection of evidence which supports the facts." (internal citation omitted)). As a

8

result, paragraph (D) does not afford Petitioner a more favorable start date for the statute of limitations than does paragraph (A).

As to paragraph (A), Respondent has argued that Petitioner's convictions finalized "on direct review" on March 7, 2000 (Docket Entry 7 at 6), as the Court of Appeals's mandate issued on February 21, 2000, see N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 27(a) (extending deadline when last day falls on weekend or holiday), after which 15 days remained for appealing to the North Carolina Supreme Court, see N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review). (See Docket Entry 7 at 6.) That analysis follows the approach previously endorsed in this District. See Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (Eliason, M.J.) (deeming conviction final on direct review 35 days after North Carolina Court of Appeals' opinion where no timely petition for discretionary review filed), recommendation adopted, id. at 596 (Osteen, J.). The Court thus should conclude that Petitioner's case became final, for purposes of calculating the limitation period, on March 7, 2000. See Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012) (holding that a petitioner's case becomes final when time for pursuing direct review expires).

Petitioner's one-year limitation period then ran, unimpeded, from March 7, 2000, until it expired on Wednesday, March 7, 2001. Petitioner did not file his instant Petition until January 23, 2019 (Docket Entry 2 at 15), nearly eighteen years out of time. Moreover, because (as detailed above) Petitioner filed his pro se MAR on August 23, 2018, after AEDPA's one-year statute of limitations had already expired, that belated filing could not toll the limitation period, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (holding that state filings made after expiration of federal limitation period do not restart or revive that period). Therefore, Petitioner filed Ground One outside of the applicable limitation period.

Nonetheless, the Court may equitably toll the one-year limitation period, see Holland v. Florida, 560 U.S. 631, 634 (2010), if Petitioner demonstrates that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing, see id. at 649. Equitable tolling requires a case by case analysis. Id. at 649-50. In this case, Petitioner asserts that equitable tolling should apply because of "the significant changes in law" (Docket Entry 2, ¶ 12 (Ground One)(a)), referring to "newly discovered evidence" regarding "2017 expungement law" and "Senate Bill Acts 754/756 Fair Sentencing Act" (id., ¶ 18). However, as detailed below, Petitioner's arguments concerning those laws lack merit and will not toll the statute of limitations.

10

To the extent Petitioner asserts that his lack of counsel and/or legal fluency should toll the statute of limitations (see Docket Entry 2, ¶ 12 (Ground One)(a) (arguing that "[Petitioner] is not a trained litigator and requires the assistance of counsel"), the Court should deny relief because, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling," United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Nor should the Court equitably toll the limitation period based on allegations of lack of assistance by North Carolina Prisoner Legal Services (NCPLS) and/or lack of access to a law library (see Docket Entry 2, ¶ 12 (Ground One)(a)). Petitioner provides no evidence to support these conclusory contentions (see id.), and such unsupported allegations cannot justify equitable tolling, see San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011) ("Mere conclusory allegations are insufficient to raise the issue of equitable tolling."); see also Foster v. Slagle, No. 1:16CV523, 2017 WL 2983300, at *3 (M.D.N.C. May 22, 2017) (unpublished) (Peake, M.J.) ("[A]t the time of [the p]etitioner's convictions, North Carolina provided legal services to prisoners through [NCPLS], including review and assistance with state and federal post-conviction petitions, and representation in meritorious cases."), recommendation adopted, 2017 WL 2983000 (M.D.N.C. July 12, 2017) (unpublished) (Osteen, Jr., C.J.); Alenjandro Silva v. Perry, No. 1:15CV167, 2015 WL 10891651, at *2

11

(M.D.N.C. May 7, 2015) (Eagles, J.) (unpublished) (finding that conclusory allegations regarding denial of legal assistance by NCPLS did not "warrant equitable tolling for over a decade"), appeal dismissed, 622 F. App'x 234 (4th Cir. 2015).

In sum, Petitioner has not demonstrated a sufficient basis for equitable tolling, and Ground One remains untimely.

**B. Ground Two**

In his second claim for relief, Petitioner has asserted that "this [C]ourt has requisite jurisdiction to recommend/decree orders under the concurrent sentence doctrine to consolidate judgments into single counts (as they happened) for a reduced sentence" pursuant to "U.S. Senate Bill 754-756," otherwise known as the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "First Step Act"). (Docket Entry 2, ¶ 12 (Ground Two)(a).) Contrary to Petitioner's assertions, the First Step Act applies to "prisoner[s] . . . who ha[ve] been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or . . . [are] in the custody of the Bureau of Prisons." 18 U.S.C. § 3635(4). Petitioner meets neither requirement. In other words, "[t]he First Step Act applies to federal convictions, not state, and i[t] therefore does not pertain to [Petitioner's] state sentence." Acosta v. United States, No. CV-17-00765, No. CR-05-01319, 2019 WL 2429100, at *4 (D. Ariz. June 11, 2019)

12

(unpublished), appeal filed, No. 19-16254 (9th Cir. June 24, 2019).

Accordingly, Petitioner's second claim lacks merit.

**C. Ground Three**

Next, Ground Three states that "effective new laws" now exist to "correct the fundamental miscarriages of justice[] in this case." (Docket Entry 2, ¶ 12 (Ground Three)(b).) More specifically, "[a]s a result of Governor Roy Cooper's 2017 new expungement law [Bill 455, N.C.G.S. §§ 15A-145 to 160], [Petitioner] move[d] this [C]ourt . . . to enforce the Forsyth County Superior Court [to] expunge file [numbers] 83-41769, 90-22991, 90-7814, 81-70 and Asst D.W.I.SI, (III Prior Record)." (Id., ¶ 12 (Ground Three)(a).)

Article 5 of Chapter 15A of the North Carolina General Statutes governs the conditions under which an individual may apply to have certain of his or her criminal convictions expunged. See generally N.C. Gen. Stat. §§ 15A-145 to 153. Petitioner has not alleged that he ever applied for (much less that the state granted) an expunction of any of his prior convictions, or that such an expunction would have impacted his prior record level and/or the length of his prison sentence. Under such circumstances, Ground Three fails as conclusory. See, e.g., Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that, in order to obtain an evidentiary hearing, habeas petitioner must come forward with some evidence that claim might have merit), abrog'n on other grounds

13

recog'd, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999); <u>Powell v. Shanahan</u>, No. 3:13CV496, 2014 WL 1464397, at *8 (W.D.N.C. Apr. 15, 2014) (unpublished) (deeming "unsupported and conclusory allegations . . . insufficient to warrant either an evidentiary hearing or habeas relief"). This claim also fails as non-cognizable on federal habeas review as it relies entirely on state expungement laws. <u>See</u> 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus does not lie for errors of state law.'" (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990))).

The Court should thus deny Ground Three as conclusory, or alternatively, as non-cognizable on federal habeas review.

**D. Ground Four**

Lastly, Petitioner's fourth "claim" would require the Court "to appoint counsel" (Docket Entry 2, ¶ 12 (Ground Four)), because "a prisoner in custody is constitutionally entitled to some form of legal assistance" (<u>id.</u>, ¶ 12 (Ground Four)(a)). In fact, "[p]risoners have no right to counsel in a collateral proceeding." <u>United States v. MacDonald</u>, 966 F.2d 854, 859 n. 9 (4th Cir. 1992) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987)).

14

Instead, "[t]he determination whether to appoint counsel [for a state prisoner in a habeas case] is left to the discretion of the district court." Murvin v. Creecy, No. 86-7301, 812 F.2d 1401 (table), 1987 WL 36472, at *1 (4th Cir. Feb. 25, 1987) (unpublished). In exercising that discretion, the Court must determine whether Petitioner has shown "that his case is one with exceptional circumstances." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrog'n in part on other grounds, Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296 (1989). More pointedly, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

In this case, Petitioner neither possesses a colorable claim nor lacks the capacity to present any such claim. Moreover, the grounds cited by Petitioner in support of Ground Four reflect circumstances confronted by many prisoner-litigants and thus do not, by definition, qualify as exceptional. Further, Petitioner's allegation regarding NCPLS's "refus[al] to provide any assistance whatsoever" (id.), constitutes a conclusory claim that entitles him to no relief. See generally Nickerson, 971 F.2d at 1136. Finally,

15

the fact "[t]hat NCPLS declines to represent some inmates does not deny prisoners meaningful access to the courts." Zuniga v. Perry, No. 1:15CV35, 2015 WL 5159299, at *5 (M.D.N.C. Sept. 2, 2015) (unpublished). "NCPLS attorneys are not required to take every prisoner action brought by inmates and may use their professional judgment when determining whether or not to provide representation in a matter." Id. (citing Salters v. Butler, Civ. Action No. 5:06-CT-3073, 2006 WL 4691237, at *1 (E.D.N.C. Oct. 19, 2006), aff'd 214 F. App'x 267 (4th Cir. Jan. 24, 2007)).

As a result, Petitioner's fourth ground for relief fails as a matter of law.[6]

### IV. Conclusion

Petitioner has not shown a valid basis for habeas relief or for appointment of counsel.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be granted, that the Petition (Docket Entry 2) be dismissed in part and denied in part, and that

---

[6] For the same reasons, Petitioner's separate motion for appointment of counsel (Docket Entry 9) will be denied.

a judgment be entered accordingly, without issuance of a certificate of appealability.

**IT IS ORDERED** that Petitioner's Motion for Appointment of Counsel for Habeas Proceeding (Docket Entry 9) is **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 6, 2019